1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DANNY BROWN,

                          Plaintiff,

        v.

LOUIS DEJOY,

                          Defendant.

CASE NO. 3:20-cv-05307-BHS

ORDER

13    This matter comes before the Court on Defendant Louis DeJoy's[1] Motion for

14 Summary Judgment, Dkt. 12. Plaintiff Danny Brown alleges that the United States Postal

15 Service ("USPS") discriminated against him based on his age by denying him a

16 promotion and retaliating against him after he complained about the promotion denial.

17 Dkt. 1, ¶¶ 18–30. USPS[2] moves for summary judgment on both claims, arguing that it

18 denied Brown the promotion for legitimate, non-pretextual reasons and that he has failed

19

20    [1] Pursuant to Federal Rule of Civil Procedure 25(d), when a public officer ceases to hold
office, "[t]he officer's successor is automatically substituted as a party." Louis DeJoy is the
21 current Postmaster General of the United States Postal Service and is automatically substituted
under this Rule.

22    [2] For clarity, the Court refers to USPS, rather than DeJoy, as the defendant in this Order.

to show retaliation because he did not engage in statutorily-protected conduct nor did he suffer an adverse employment action. Dkt. 12. The Court has considered the briefing filed in support of and in opposition to the motion and the remainder of the file and grants in part and denies in part the motion for the reasons stated below.

## I.    BACKGROUND

Brown has been employed by USPS since 2005. Dkt. 1, ¶ 9. From November 2014 to August 2018, Brown was an Executive Administrative Schedule ("EAS") Level 19[3] Manager of Customer Service at the Tacoma-Lincoln Station. Dkt. 18 at 5. While in the position, Brown helped Tacoma-Lincoln become one of the top performing stations in Tacoma. *Id.* at 7. In September 2018, Brown was moved to EAS-20 Manager of Customer Service at the Tacoma-Proctor Station. *Id.* The following month, in October 2018, he became acting EAS-22 Manager of Customer Service at the Tacoma-University Place Station. *Id.*

In November 2018, Brown applied for an EAS-21 level manager position at the Tacoma Central Carrier Facility ("TCCF"). Dkt. 12 at 3. The manager of that station was Dagmar Wilson, who was also the Acting Manager of Customer Service Operations for the City of Tacoma. Dkt. 1, ¶ 11. Wilson would have been the direct reporting supervisor for the open position. *Id.* Wilson's daughter, Leslie Green, also applied for the position. *Id.* ¶¶ 10–12. Brown and Green were the only two applicants for the position, and they

---

[3] USPS uses the Executive Administrative Schedule ("EAS") to determine the pay level of managers. The EAS pay level depends on the size category of the district where the office is located and the position.

were both interviewed by Karen Bacon, the Acting Postmaster for the City of Tacoma. *Id.* ¶ 12.

At the time Green and Brown interviewed, Brown was 55 years old. He had been employed by USPS for around thirteen years and had been in a manager position for about five years. *Id.* ¶ 9. Green was 26 years old and had been a manager at USPS for about five years. *Id.* ¶ 10. Green received the promotion; Brown did not. *Id.* ¶ 13. Brown alleges that Bacon told him he was denied the position because "his heart was not in the interview and because [Brown] mentioned he would be retiring soon." *Id.*

Brown later met with Bacon again to discuss being passed over for the promotion. *Id.* ¶ 14. At that time, Brown presented Bacon with allegations that Green had been selected over him because of nepotism and age discrimination. *Id.* Brown suggested that Wilson be moved back to the University Place station and that he be moved out of his acting position and back to his EAS-20 position at Tacoma-Proctor. *Id.* Both he and Wilson were moved in accordance with that suggestion. *Id.* ¶ 15. Brown alleges that Wilson then told other USPS employees that Brown was not allowed at the University Place station unless he was there to purchase stamps. *Id.* ¶ 16. Brown claims that because this amounted to a "hostile work environment" he was forced to transfer to a lower-level position (EAS-17) in Spokane. *Id.* ¶ 17.

Brown sued USPS in April 2020, arguing that USPS violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, that he had been denied a promotion because of his age, and that USPS employees, specifically Wilson, retaliated against him after he complained about being denied the promotion. *Id.* ¶¶ 18–

30. USPS now moves for summary judgment on both of Brown's claims, arguing that it denied Brown the promotion for legitimate, non-pretextual reasons and that he has failed to show retaliation because he did not engage in statutorily protected conduct or suffer an adverse employment action. Dkt. 12. Brown opposes the motion, arguing that USPS's proffered reasons for denying Brown a promotion are pretextual and that he satisfied his burden to establish a prima facie case of retaliation. Dkt. 18.

## II.   DISCUSSION

**A.    Summary Judgment Standard**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must *view all evidence in the light most favorable to the nonmoving party* and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986) (emphasis added); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that

1  there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails

2  to establish the existence of a genuine issue of material fact, "the moving party is entitled

3  to judgment as a matter of law." *Celotex*, 477 U.S. at 323–24.

4      There is no requirement that the moving party negate elements of the non-

5  movant's case. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Once the moving

6  party has met its burden, the non-movant must then produce concrete evidence, without

7  merely relying on allegations in the pleadings, that there remain genuine factual issues.

8  *Anderson*, 477 U.S. at 248.

9  **B.**   **Promotion Denial**

10      The *McDonnell Douglas* burden-shifting framework applies to Brown's failure to

11  promote claim. Under *McDonnell Douglas*, if the employee produces evidence sufficient

12  to make a prima facie case of discrimination, the burden shifts to the employer to provide

13  a legitimate, non-discriminatory reason for the adverse action. *Hill v. BCTI Income Fund-*

14  *1*, 144 Wn.2d 172, 181–82 (2001), *abrogated on other grounds by Mikkelsen v. Pub. Util.*

15  *Dist. No. 1 of Kittitas Cnty.*, 189 Wn.2d 516 (2017). If the employer proffers a legitimate,

16  non-discriminatory reason, the burden shifts back to the employee to produce evidence

17  that the employer's reason is pretextual. *Id.* at 182. The employee can show the

18  articulated reason is pretextual "either directly by persuading the court that a

19  discriminatory reason more likely motivated the employer or indirectly by showing that

20  the employer's proffered explanation is unworthy of credence." *Chuang v. Univ. of Cal.*

21  *Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal quotation omitted). If

22

1   the employee cannot show pretext, the employer is entitled to judgment as a matter of

2   law. *Id.*

3          To establish a prima facie case in a failure to promote age discrimination claim,

4   Brown must show that he was "(1) at least forty years old, (2) qualified for the position

5   for which an application was submitted, (3) denied the position, and (4) the promotion

6   was given to a substantially younger person." *France v. Johnson*, 795 F.3d 1170, 1174

7   (9th Cir. 2015) (internal quotation omitted).

8          USPS did not argue that Brown failed to establish a prima facie case and Brown

9   therefore did not brief the issue either. *See* Dkt. 12 at 13; Dkt. 18 at 11. Nonetheless, the

10   undisputed facts demonstrate that Brown has established a prima facie case for a failure

11   to promote age discrimination claim. Brown was over the age of forty at the time he

12   applied for the promotion, no one disputes that he was qualified for a one-level

13   promotion, Brown was denied that position, and the promotion was given to Green, a

14   substantially younger person.

15          Because Brown established a prima facie case of discrimination, the burden shifts

16   to USPS to provide a legitimate, non-discriminatory reason why Green was promoted

17   over Brown. *See Hill*, 144 Wn.2d at 181–82. USPS's proffered reasons can be grouped

18   into three categories: (1) Green's application materials and demonstrated plans for the

19   station were superior to Brown's; (2) Green performed better in her interview than Brown

20   performed in his; and (3) the station Green managed was performing better than the

21   station Brown managed. Dkt. 12 at 12–15.

22

### 1.  Application Materials

USPS first argues that Green submitted superior application materials than Brown. Dkt. 12 at 13–14; Dkt. 14, Declaration of Karen A. Bacon ("Bacon Decl."), ¶¶ 7, 11. Specifically, USPS points out that "[p]ortions of [Brown's] work experience were basically a list of manager responsibilities with no definitive activities," that he provided a "single page '30-60-90-day plan' that was superficial and contained misspellings" and did not identify specific goals or measuring methods, and that he did not fully address his knowledge, skills, and abilities. Bacon Decl., ¶ 7. According to Bacon, but without much explanation, Green's application materials were superior. *Id.* ¶ 11. USPS submitted both Brown and Green's application materials as exhibits.

Brown argues that Bacon's declaration proves that the application materials were not determinative because she still interviewed him and acknowledged that he was "minimally to well qualified." Dkt. 18 at 12 (quoting Bacon Decl., ¶ 8). He also argues that his application was not deficient or unprofessional and that the 30-60-90-day plan he provided was not a required application material, nor one he intended to submit during the interview. *Id.* He therefore argues that the plan could not have been a reason not to grant him a promotion. *Id.*

The Court cannot question an employer's legitimate evaluation and judgment of applicants for a promotion. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1285 (9th Cir. 2000) ("That [an employer] made unwise business judgments or that it used a faulty evaluation system does not support the inference that [the employer] discriminated on the basis of age."). Comparison of application materials is a legitimate reason to grant one

applicant a promotion over another. The same is true for an applicant's stated future plans

and goals for performance, regardless of whether such plans were required application

materials. While it may be true that Brown and Green's application materials were not

themselves dispositive, they were legitimate evaluation tools apparently used by Bacon to

judge the applicants' suitability for the position.

### 2. Interview Performance

USPS argues that Green was also selected over Brown because of her superior

interview performance. Bacon asserts that during his interview, Brown was unable to

demonstrate that he had mastered the requisite skills for the position and failed to identify

areas needing improvement at the new station. Bacon Decl., ¶¶ 8–9. In contrast, Bacon

states that Green was able to "fully articulate current opportunities in the unit with

detailed steps and methods for tracking progress." *Id.* ¶ 11.

Brown does not say much about his interview performance further than stating that

the evaluation is subjective and comes down to a credibility determination between him

and Bacon. Dkt. 18 at 13.

"While a subjective evaluation system can be used as cover for illegal

discrimination, subjective evaluations are not unlawful per se and their relevance to proof

of a discriminatory intent is weak." *Coleman*, 232 F.3d at 1285 (internal quotation

omitted). Brown's argument that Bacon's evaluation of his and Green's interview

performance is subjective is insufficient to suggest the explanation is pretextual.

### 3.     Station Performance

Finally, USPS argues that Green was selected over Brown because the station she managed was performing better. Bacon asserts that Brown's unit was struggling in multiple areas, ranked last in two performance categories, had a higher accident rate than desired, and was second to last in overall performance. Bacon Decl., ¶ 10. Green's unit was also not on track in some of the same areas in which Brown's unit was struggling, but her unit's accident rate was lower, her unit was ranked fourth[4] in the same two performance categories, and her unit was ranked third to last (one spot higher than Brown's) in overall performance. *Id.* ¶ 11.

Brown does not dispute the performance of the University Place station but argues that he had only been at the University Place station for less than four months at the time he interviewed for the promotion and the station was already one of the worst performing stations when he arrived. Dkt. 18 at 13. Brown argues he had not yet had time to improve the unit and that he had improved his previous station from being the second worst performing station to the best performing. *Id.* In contrast, Green had been at her station for almost a year. *Id.*

Brown put forth enough explanation to suggest this proffered reason may be pretextual. The station he managed previously was a top performer, and it seems he had little influence over the way his current station was performing in the short time he was there.

---

[4] It is unclear how many units were ranked.

### 4.   Alternative Explanations

Another way a plaintiff can rebut an employer's proffered reasons for failing to promote in an age discrimination case is to present evidence that a discriminatory reason more likely motivated the promotion decision. Brown argues that a discriminatory reason more likely motivated USPS's decision because Bacon did not provide any positive comments on Brown's reviews even though he had received many positive reviews in the past, Bacon "effectively made her decision before the interviews" by saying that he was only granted an interview out of respect for his work, and Bacon "unfairly weighed application materials that were not required" along with Brown's short tenure at a struggling station. Dkt. 18 at 14.

Brown does not explicitly argue pretext is shown by two instances that support this argument mentioned elsewhere: (1) Bacon discussing his retirement plans in his interview, and (2) Bacon telling him that he was not awarded the position because he "had mentioned he would be retiring soon." Dkt. 1, ¶ 13. The first allegation is mentioned in the fact section of Brown's response to USPS's motion, Dkt. 18 at 8, and in his deposition transcript, Dkt. 13-1, Deposition of Danny Brown ("Brown Dep.") at 48:9–48:11. The second allegation is mentioned in Brown's complaint, Dkt. 1, ¶¶ 13–14, and in Brown's response to USPS's interrogatories, Dkt. 21-13 at 9. Neither is mentioned in Brown's declaration. *See* Dkt. 20, Declaration of Danny Brown ("Brown Decl."). USPS disputes both allegations, arguing that Bacon did not bring up his retirement, that questions about future plans are normal interview questions asked of all applicants, and

1  that Brown and Bacon did not discuss his age or retirement after he was not awarded the

2  position. Dkt. 12 at 14–18.

3       While Brown's allegations may not have been clearly briefed and argued, the

4  evidence provided is sufficient to create a disputed issue of material fact as to whether

5  USPS's proffered reasons for denying Brown a promotion are pretextual. Therefore,

6  USPS's motion for summary judgment as to Brown's failure to promote claim is

7  DENIED.

8  **C.**    **Retaliation**

9       The *McDonnell Douglas* burden-shifting framework also applies to Brown's

10  retaliation claim. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).[5] To

11  create a triable issue, the plaintiff first must establish a prima facie case by showing "(1)

12  involvement in a protected activity, (2) an adverse employment action[,] and (3) a causal

13  link between the two." *Id.* (internal citation omitted). If the plaintiff makes a prima facie

14  case, the burden shifts to the defendant to present a legitimate reason for the adverse

15  employment action. *Id.* If the employer does so, the burden shifts back to the plaintiff to

16  "demonstrate a genuine issue of material fact as to whether the reason advanced by the

17  employer was a pretext." *Id.* "Only then does the case proceed beyond the summary

18  judgment stage." *Id.*

19

---

20      [5] Although *Brooks* and other cases discussed in this Order are Title VII cases, not ADEA
cases, they are relevant because "the ADEA anti-retaliation provision is parallel to the anti-

21  retaliation provision in Title VII and that cases interpreting the latter provision are frequently
relied upon in interpreting the former." *Hashimoto v. Dalton*, 118 F.3d 671, 675 n.1 (9th Cir.

22  1997) (internal quotations and alterations omitted).

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (internal citation omitted). "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (internal citation omitted).

USPS argues that Brown failed to establish a prima facie case for retaliation because he did not engage in statutorily protected activity because he complained to Bacon that Green was hired over him because of nepotism, not because of his age. Dkt. 12 at 16–18. USPS also argues that Brown did not suffer an adverse employment action because the alleged retaliatory conduct was not severe, pervasive, or subjectively or objectively offensive. *Id.* at 18–20. Brown argues that he did engage in protected activity by complaining to Bacon that the promotion decision was based on his age. Dkt. 18 at 14. He also argues that he suffered adverse employment actions when Wilson announced he was not permitted at the University Place Station and when he was denied extra assistance at the Tacoma-Proctor station. Dkt. 18 at 14–15.

There is a factual dispute regarding Brown's complaint to Bacon. USPS argues that Brown only mentioned nepotism and not age when he complained to Bacon. *See* Dkt. 12 at 17; Bacon Decl., ¶¶ 15, 18. Notably, Brown only mentions speaking to Bacon about nepotism and does not mention speaking to her about age discrimination in both his deposition and his declaration. *See* Brown Dep. at 52:9–53:13, 55:22–56:9; Brown Decl.,

1    ¶ 6. But Brown alleges elsewhere that he did complain about age discrimination along

2    with his nepotism complaints. *See* Dkt. 1, ¶ 14 (complaint); Dkt. 18 at 14 (response to

3    motion for summary judgment); Dkt. 21-13 at 8–9 (response to interrogatories).

4         Brown brings this claim under 29 U.S.C. § 633a(a),[6] which prohibits a federal

5    employer from discriminating against its employees based on age, including by

6    retaliating against an employee for opposing age discrimination. Thus, the "protected

7    conduct" in which Brown engaged must be related to age discrimination. Brown

8    complaining to Bacon about nepotism does not qualify as protected activity under the

9    ADEA. Because the parties dispute whether Brown complained about age discrimination

10   or just about nepotism, there is a dispute of material fact as to whether Brown engaged in

11   protected activity.

12        The parties also dispute whether Brown suffered an adverse employment action.

13   Brown argues that he suffered three adverse employment actions. First, he asserts that he

14   was informed by multiple individuals that Wilson ordered them not to allow him into the

15   University Place Station except to purchase stamps. Dkt. 18 at 14. Second, he asserts that

16   he was denied assistance when his station was shorthanded even though assistance was

17   available. *Id.* at 15. Finally, he alleges Wilson told him that his station would "give TCCF

18   help, regardless," even though his station did not have any help to give. *Id.*

19

20        [6] Brown's complaint alleges that USPS violated 29 U.S.C. § 623(d), which prohibits
     private sector employers from retaliating against their employees for lodging opposition to age
     discrimination in the workplace. The Supreme Court held in *Gomez-Perez v. Potter*, 553 U.S.
21   474 (2008), that federal employees enjoy the same protection from retaliation under 29 U.S.C.
     § 633a(a) despite the provision's vaguer language. The Court thus interprets Brown's retaliation
22   claim as arising under § 633a(a).

1       "An adverse employment action is any adverse treatment that is based on a

2   retaliatory motive and is reasonably likely to deter the charging party or others from

3   engaging in protected activity."[7] *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007)

4   (internal quotation omitted). "Social ostracism" alone is not an adverse employment

5   action. *Hellman v. Weisberg*, 360 F. App'x 776, 779 (9th Cir. 2009). But taking away

6   previously available support services is an adverse employment action. *See Ray v.*

7   *Henderson*, 217 F.3d 1234, 1241–42 (9th Cir. 2000) (endorsing *Knox v. Indiana*, 93 F.3d

8   1327, 1334 (7th Cir. 1996), where the Seventh Circuit held that "depriving [a] person of

9   previously available support services" constituted an adverse employment action).

10       Brown successfully alleges that he suffered adverse employment actions. All three

11   actions, if true, hindered Brown's ability to effectively do his job and amounted to more

12   than just "social ostracism." He also asserts that those actions dissuaded him from

13   requesting any more help. *See* Brown Dep. at 68:6–68:24.

14       USPS therefore has the burden to present legitimate reasons for the adverse

15   employment actions, and it has failed to do so. With respect to Brown's assertion that he

16   was excluded from the University Place station, USPS argues that Wilson was not the

17   one who announced he was being excluded from the station and that Brown was not

18   dissuaded from going to the University Place station when he needed to. Dkt. 12 at 20.

19   With respect to Brown's second assertion, USPS simply argues that Brown has no

20

21        [7] Both parties overlap Brown's retaliation claim with a hostile work environment claim.
*See, e.g.*, Dkt. 1, ¶¶ 17, 27; Dkt. 12 at 19. Retaliation and hostile work environment are separate

22   claims. Brown's claim for hostile work environment, to the extent it exists, is discussed below.

1    information to suggest who made that decision or that it was based on a retaliatory

2    motive. *Id.* With respect to Brown's third assertion, USPS argues that Wilson was polite

3    when she requested him to provide help to TCCF. *Id.*

4         While USPS argues that Brown failed to meet his burden of establishing the

5    second element of a retaliation claim (adverse employment action), most of USPS's

6    argument seems to be that the alleged adverse employment actions were unrelated to

7    retaliatory animus, which would go toward the third element (causation). Brown argues

8    that causal connections can be inferred by temporal proximity of the protected activity

9    and the adverse employment actions. Dkt. 18 at 14 (citing *Clark Cnty. Sch. Dist. v.*

10   *Breeden*, 532 U.S. 268, 273 (2001)).

11        Brown's alleged exclusion from the University Place station took place only a few

12   weeks after he alleges that he complained to Bacon about being denied a promotion based

13   on his age. It is unclear when he was denied help at Tacoma-Proctor or when Wilson told

14   him his station needed to help TCCF, though given he transferred to Spokane in August

15   2019, the alleged retaliatory activity was within six months of Brown's complaints to

16   Bacon.

17        Brown suffered adverse employment actions after he alleges that he engaged in

18   protected activity. Whether those adverse employment actions were motivated by

19   Brown's protected activity is a question of fact. Therefore, USPS's motion for summary

20   judgment as to Brown's retaliation claim is DENIED.

21

22

1 **D.  Hostile Work Environment**

2          It is somewhat unclear whether Brown intended to argue a separate hostile work

3 environment claim or whether he simply intended to use the term "hostile work

4 environment"—a legal term of art—to claim he suffered adverse employment actions.

5 The Court briefly analyzes Brown's hostile work environment claim, to the extent it

6 exists.

7          To establish a prima facie case in a hostile work environment claim, Brown must

8 show that (1) he was "subjected to verbal or physical conduct" based on his age; (2) "the

9 conduct was not welcomed; and (3) the conduct was sufficiently severe or pervasive to

10 alter the conditions of his employment and create an abusive working environment."

11 *Chamat v. Geithner*, 381 F. App'x 728, 730 (9th Cir. 2010). Brown argues the same three

12 instances mentioned in his retaliation claim amounted to a hostile work environment.

13 USPS argues that any conduct Brown did experience was not "severe or pervasive"

14 enough to constitute a hostile work environment. Dkt. 12 at 19.

15          Title VII[8] prohibits harassment so severe and pervasive as to alter the conditions

16 of employment and create a hostile work environment. *Id.* (citing *Meritor Sav. Bank, FSB*

17

---

18          [8] While this is an ADEA case, Title VII hostile work environment cases are frequently
19 relied upon in ADEA cases as the analysis is identical under each. *See Richardson v. Hilton
   Resorts Corp.*, No. 18-00340 LEK-RLP, 2019 WL 1440248, at *4 (D. Haw. Mar. 29, 2019). It is
   also worth mentioning that while courts in this circuit have repeatedly recognized hostile work
20 environment claims based on age, *see, e.g.*, *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp.
   3d 1043, 1058–59 (D. Haw. 2015), the Ninth Circuit has at times been hesitant to affirm that
21 such a claim exists, *compare Stevens v. Cnty. of San Mateo*, 267 F. App'x 684, 685 (9th Cir.
   2008) ("we have never definitively recognized an age-related hostile work environment claim")
   *with Hodge v. Oakland Unified School Dist.*, 555 F. App'x 726, 727 (9th Cir. 2014) (seemingly
22 acknowledging that age-based hostile work environment claims are viable). The Court proceeds

1   *v. Vinson*, 477 U.S. 57, 67 (1986)). The "environment must be both objectively and

2   subjectively offensive, one that a reasonable person would find hostile or abusive, and

3   one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524

4   U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)).

5   Courts consider the totality of the circumstances, including "the frequency of the

6   discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

7   a mere offensive utterance; and whether it unreasonably interferes with an employee's

8   work performance." *Harris*, 510 U.S. at 23. Isolated incidents, unless extremely serious,

9   do not amount to "discriminatory changes in the terms and conditions of employment."

10  *Faragher*, 524 U.S. at 788 (internal quotation omitted).

11      The Court agrees with USPS that Brown has failed to allege conduct "sufficiently

12  severe or pervasive." Considering the totality of the circumstances, the allegedly

13  discriminatory conduct was infrequent, and it was not physically threatening or

14  humiliating. In other words, Brown cites only to what seem to be isolated incidents not

15  serious enough to support a hostile work environment claim.

16      To the extent Brown submits a hostile work environment claim, it is DISMISSED,

17  and USPS's motion for summary judgment is GRANTED as to that claim.

18

19

20

21  _____

22  to analyze this claim under the assumption that a hostile work environment claim based on age is
    viable.

ORDER - 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

### III.  ORDER

Therefore, it is hereby **ORDERED** that Defendant Louis DeJoy's Motion for Summary Judgment, Dkt. 12, is **GRANTED in part** and **DENIED in part**.

Dated this 1st day of March, 2022.

BENJAMIN H. SETTLE
United States District Judge